————— BRUNDAGE and Others, Plaintiffs, *v.* MIDI REALTY CORPORATION and Others, Defendants.

Supreme Court, New York County, June 23, 1933.

*Earl D. Deremer,* for the plaintiffs.

*Harry Hoffman,* for the defendant 2 East Fifty-fourth Street Corporation.

*Davis, Polk, Wardwell, Gardiner & Reed,* for the defendant Guaranty Trust Company of New York.

*Townsend Morgan,* for the receivers.

SHIENTAG, J. The motion is to vacate an order appointing receivers in foreclosure. The mortgage sought to be foreclosed covers a leasehold on premises No. 2 East Fifty-fourth street, borough of Manhattan, city of New York, for a term of twenty-one years from June 19, 1926, with the privilege of two renewals for similar terms. In accordance with the provisions of the lease a seventeen-story office building was erected on the premises. Bonds were issued and sold for the purpose of erecting this building, and to secure these bonds the mortgage now in foreclosure was executed by the lessee. The mortgage and the bonds for which it is security are in all respects subject and subordinate to the fee and the rights and remedies of the owner thereof. The original bond issue amounted to the principal sum of $475,000 and bore interest at six and one-half per cent; $42,000 in bonds have been paid, leaving a balance of $433,000 now outstanding. Bonds in an amount of $15,000 matured on September 15, 1932, and were unpaid. The ground rent reserved in the lease was originally the sum of $85,000. It was reduced to $80,000 on August 31, 1932, for a period of three years. In consideration of this reduction in rent it is alleged that there was assigned by the lessee to the fee owner all " subleases and subtenancies of the premises then outstanding and those which it might thereafter make, together with all rentals that might thereafter become due and payable." The lessee is in default under the leasehold mortgage which is the subject of this foreclosure action. The mortgage provides as follows:

" Article IX. Foreclosure, Sale and Distribution. Section 1. In any case in which * * *, the Trustee has the right to declare the principal of all bonds hereby secured and outstanding to be due and payable immediate, and/or in the event of default in the prompt payment of the principal and/or interest or any part thereof due September 15, 1941, the Trustee may, without any action on the part of any bondholder, and with or without declaring said bonds due, and, upon the written request of the holders of not less than fifty-one per cent. (51%) in principal amount of said bonds then outstanding, and upon being indemnified to its satisfaction shall proceed to protect and enforce its rights and the rights

of the bondholders herein, either by suit or suits in equity or at law, in any Court or Courts of competent jurisdiction, whether for specified performance of any covenant or agreement contained herein or in aid of the execution of any powers herein granted or for any foreclosure hereof or hereunder, or for any other sale of the mortgaged premises."

It is further provided that " Whenever under the provisions hereinabove contained, it shall have become the duty of the Trustee to institute legal proceedings upon the written request of the requisite number of bondholders and upon deposit or tender of deposit of the requisite number of bonds with the Trustee, and upon tender of proper indemnity, and the Trustee shall have wrongfully or unreasonably refused or failed to act within thirty (30) days after such request and tender of indemnity, then and in any such case, but under no other condition, the same number of bondholders who under the provisions hereof have the right to demand action by the trustee, may jointly institute such proceedings in law or equity as it was the duty of the trustee to institute, but for the legal benefit of all holders of the bonds and coupons then outstanding."

The holders of bonds may, therefore, maintain an action only (1) after the deposit or tender of deposit of the requisite number of bonds with the trustee; (2) after the tender of proper indemnity to the trustee, and (3) after the trustee shall have wrongfully and unreasonably refused to act.

On December 3, 1932, the holders of $232,700 par value of outstanding bonds (over fifty-one per cent) notified the Guaranty Trust Company, the trustee under the mortgage, of a default under the terms of the mortgage and requested the trustee to proceed to a foreclosure. Incorporated in the request served upon the trustee was the following: " The undersigned, as members of said Bondholders' Protective Committee, but not individually and with no personal liability, hereby agree to and do hereby indemnify you to the extent solely, however, of the bonds deposited with the committee as hereinafter stated and subject to the limitations of the pledge hereinafter made, against any and all fees, costs and expenses which you have heretofore properly incurred or may hereafter properly incur in the prosecution of such foreclosure proceedings, and against any and all loss, claims or damage which may be brought or made against you by reason of your action in declaring all of said bonds to be due and payable immediately and in foreclosing said trust mortgage and securing the appointment of a receiver. As security for the above indemnity agreement, the undersigned tender and offer to pledge with you, as trustee, all of

the Midi Realty Corporation first mortgage bonds now deposited with the committee at its depositary, Chicago Title & Trust Company, Chicago, Illinois, subject, however, to the lien of said Chicago Title & Trust Company as security for its depositary fees and expenses."

To this request the Guaranty Trust Company replied under date of December 20, 1932, as follows: " We are informed that there are certain existing defaults under the ground lease, to which the trust mortgage securing the bonds is subordinate. We are advised that by reason of such defaults the owner of the fee of the mortgaged premises may cancel such ground lease, thereby destroying the security of the trust mortgage and preventing recovery for the benefit of the bondholders. Under such circumstances the indemnity offered appears to be valueless and we therefore do not deem it satisfactory nor would we deem it satisfactory even if deposited with us. Furthermore, we are forced to conclude that compliance with your request would not be for the benefit of the bondholders. We must therefore respectfully decline to comply with your request."

It clearly appears from the affidavits submitted that the property is being administered carefully, efficiently and economically by the present lessee under the supervision of the owner of the fee. The officers of the company receive no salary or compensation; no agents are employed to rent or collect rent on the property. Apart from the bare necessities involved in the hiring of a superintendent, of elevator men and scrubwomen to keep the building in condition and operate it, the only salary taken from the gross rentals is that of twenty-five dollars per week for a woman who is a bookkeeper and office worker.

There are thirty-six tenants in the building. The gross rentals have averaged from $150,000 to upwards of $180,000 a year. Legal services in connection with the management of the building have been rendered without compensation. The taxes on the property have been paid to date. The court is not impressed with the vague and general statements in the opposing affidavits, of extravagance in the management of the property. No court would find fault with the payment of a living wage to employees of a building and that is all that is here being done. No court in these times would find fault with an owner of property because he allows the rents of some tenants to remain in arrears.

The defendant 2 East Fifty-fourth Street Corporation contends that the receivership should be vacated for the following reasons:

1. That the complaint fails to show that the plaintiffs have capacity to sue;

2. That the terms of the mortgage under which the bondholders

are permitted to sue on the refusal of the trustee to act have not been complied with;

3. That the receivership, if permitted to continue, would greatly impair the rental value of the property and would tend to provoke action on the part of the owner of the fee that would be calculated to wipe out all the rights of the bondholders under the leasehold mortgage:

4. That all of the rents have been assigned to the owner of the fee and that, therefore, there is actually nothing for the receivers to receive.

The court is of the opinion that the application to vacate the order appointing receivers should be granted on the following grounds:

1. It is exceedingly doubtful whether the plaintiffs have shown their right to maintain this action in that it is by no means clear that under the circumstances the trustee's failure to act is unreasonable.

2. The papers establish that there has been a complete assignment of the rents due from the subtenants and hence there is no money which the receivers can collect.

3. The appointment of a receiver being in the discretion of the court, such appointment should not be made under circumstances which may cause the forty-nine per cent of bondholders not parties to this action to be summarily stripped of any interest in the property.

To vacate the receivership at this time would not impair any of the rights of the bondholders. To continue the receivership would be to precipitate a struggle which would tend to become demoralizing in its effects. It is unquestioned that the owner of the fee is a person of complete financial responsibility.

As conditions now stand the conflict primarily is between the bondholders on the one hand and the owner of the fee on the other. The bondholders paid for the erection of this building. The court should at all times be zealous to protect their rights in so far as they are legitimately asserted. The measures to be taken, however, should be those of protection, not those of destruction.

The forty-nine per cent of minority bondholders should have an opportunity to formulate their ideas with respect to their interest in the property and if necessary to intervene in this action.

The motion to vacate the order appointing receivers is granted but upon the following conditions:

1. That such action shall be without prejudice to all proceedings heretofore had.

2. That the plaintiff bondholders' committee, through its duly

appointed representative, shall have the right to a periodical examination of the books of the lessee corporation for the purpose of ascertaining the income derived from the property and the expenditures incurred in connection therewith.

3. That such bondholders' committee be afforded the facilities for making a thorough study of the rental capacity of the building and the amount necessarily required for its economical and efficient management.

4. That such committee shall be kept informed of any assignment of rents or subleases hereafter made by the lessees and of any action instituted by the owner of the fee with respect to any rights or remedies asserted by him.

5. That such committee be advised of all proposed leases for a term of more than two years.

6. That the order vacating the appointment of receivers shall be without prejudice to the renewal of an application for a receivership in the event of any change in conditions.

The purpose of the foregoing requirements is not that the bondholders' committee shall have any active part in the management of the property but that it shall have full and complete information concerning what is being done in connection with such management, so that the committee may take such action as it deems necessary and proper for the protection of the interests of all of the bondholders. Co-operation between the bondholders and the owner of the fee looking towards an equitable readjustment of the respective rights and liabilities of the parties under the provisions of the lease and the indenture of mortgage covering it, is essential if the bondholders are to salvage anything from the property. Strife and antagonism may result in wiping out all their rights.

Settle order on one day's notice.